UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In Re:

    DONALD SCHMELCHER,                      Chapter 7
                                                                              Case No.: 11-61607

                                         *Debtor*.

APPEARANCES:

SELBACH LAW FIRM, PLLC                          JAMES F. SELBACH, ESQ.
*Attorneys for Debtor*
Suite 290
290 Elwood Davis Road
Liverpool, New York 13088

SAUNDERS KAHLER, L.L.P.                          MERRITT S. LOCKE, ESQ.
*Attorneys for the County of Oneida*
185 Genesee Street, Suite 1400
Utica, New York 13501-2194

Honorable Diane Davis, United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

      This contested matter is before the Court upon motion of the County of Oneida (the "County") against Attorney James F. Selbach, Esq., counsel of record to Debtor Donald Schmelcher ("Debtor"), made pursuant to 28 U.S.C. § 1927, 11 U.S.C. § 105(a), and Federal Rule of Bankruptcy Procedure 9011 on October 20, 2014.[1] (The "Sanctions Motion," ECF No. 36.) The impetus for the County's Sanctions Motion was Attorney Selbach's filing and continued pursuit of a motion to hold the Oneida County Department of Finance in contempt for violating the discharge injunction imposed in Debtor's case pursuant to § 524(a)(2), which Attorney Selbach

---

[1] Unless otherwise indicated, all further section references are to Title 11 of the United States Code (the "Bankruptcy Code"), 11 U.S.C. §§ 101–1532 (2012), and all further rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

filed on June 5, 2014. (The "Contempt Motion," ECF No. 23.) Following two hearings on the Contempt Motion, the Court ultimately denied the same by order dated October 8, 2014 (ECF No. 35), which confirmed the Court's oral ruling issued on September 23, 2014. For the reasons discussed below, the Court will grant in part and deny in part the County's Sanctions Motion.

## JURISDICTION

The Court has jurisdiction over the Sanctions Motion pursuant to 28 U.S.C. §§ 1334 and 157 and § 105(a). This Memorandum-Decision and Order constitutes the Court's findings of fact and conclusions of law.

## BACKGROUND

Although the parties are familiar with the facts and procedural history of the case leading up to the Sanctions Motion, given the nature of the relief requested by the County and the infrequency with which such motions arise before this Court, the Court deems it appropriate to repeat the full history here to provide a better understanding of the Court's analysis of the issues raised by the Sanctions Motion.

Debtor filed for chapter 7 relief on July 22, 2011, and the Court issued his discharge on October 25, 2011. The Clerk of Court entered the Final Decree and administratively closed Debtor's case on November 10, 2011. Attorney Selbach, although not yet counsel of record to Debtor,[2] filed an ex parte application to reopen Debtor's case in order to pursue contempt sanctions

---

[2] David J. Gruenewald, Esq. filed Debtor's case on his behalf and represented Debtor through the closing of his case. Consistent with what is now common practice in this District, however, Debtor retained Attorney Selbach for the limited purpose of reopening his case and pursuing contempt motions against certain entities, including the County. Albeit extremely late, Attorney Selbach filed his Disclosure of Compensation of Attorney for Debtor as required by § 329 and Federal Rule of Bankruptcy Procedure 2016(b) on December 1, 2014, more than six months after he first appeared in the case. (The "2016(b) Statement," ECF No. 42.) As is the norm in Attorney Selbach's cases, the 2016(b) Statement provided that, upon settlement and after the deduction of costs from the total amount recovered, $300.00 would be paid to the client and $1,000.00 would be paid to Attorney Selbach and the referring attorney, and the remainder of settlement proceeds would then be shared evenly between the client and the attorneys. The referring attorney is customarily entitled to 25% of all attorneys' fees recovered. The undersigned and the Honorable Margaret Cangilos-Ruiz, Chief Judge, who presides over the Syracuse Division of the United States Bankruptcy Court for the Northern District of New York, have repeatedly indicated that Attorney Selbach's untimely filing of the mandatory

against certain entities for alleged violations of the discharge injunction imposed in Debtor's case pursuant to § 524(a)(2). The Court granted the application by order issued May 22, 2014.

Debtor then filed the Contempt Motion and noticed the same for hearing on July 31, 2014. Oneida County opposed the Contempt Motion on July 24, 2014, therein asserting that no violation had occurred and placing Attorney Selbach on notice of Oneida County's intent to file a separate motion seeking sanctions pursuant to Rule 9011(c) unless he timely withdrew the Contempt Motion. (ECF No. 27.) Attorney Selbach did not do so and the Court heard oral argument related to the matter on July 31, 2014, and again on August 26, 2014. On the latter date, the Court requested that the parties file letter briefs in support of their respective positions on or before September 19, 2014. Debtor did not file a letter brief. Oneida County filed a letter brief on September 12, 2014. (ECF No. 31.) The matter was then ripe for an oral ruling on September 23, 2014.

The Court summarized the form, underlying facts, and substance of the Contempt Motion in its oral ruling as follows:

> On its face, Debtor's motion against Oneida County is similar, if not identical, to motions filed by Debtor's counsel against private mortgage lenders and other institutional creditors. Debtor states that Oneida County was listed as a creditor, received notice of his bankruptcy filing, and billed him in April and June 2012 for past due 2011 and 2012 property taxes. Copies of these Delinquent Tax Notices provided that "[d]elinquent taxes exist against [Debtor's] property," and "[i]n order to protect your interest in the property, it is essential that you pay the total due [in the amount of $4,960.96]. Should the tax remain unpaid, this property will be advertised and the cost added to the amount due." Debtor further states that in July

---

attorney disclosure statement may serve as a basis for the denial of compensation, *see, e.g., In re Bell,* No. 14-60510, 2014 Bankr. LEXIS 4717, at *4 n.3 (Bankr. N.D.N.Y. Nov. 13, 2014); *In re Hall*, 518 B.R. 202, 207 (Bankr. N.D.N.Y. 2014), but the Court did not reach this issue in the present case because the Contempt Motion was denied. It bears noting, however, that Attorney Selbach filed the 2016(b) Statement only after the County pointed to his failure to do so in the Sanctions Motion in support of its argument that, given Attorney Selbach's normal compensation structure under which he receives the majority of actual damages settled upon by the parties, his filing of the Contempt Motion was motivated primarily to obtain attorneys' fees rather than by a desire to compensate Debtor for actual damages allegedly suffered. The Court will necessarily address the County's argument in the discussion *supra*.

> 2012, Oneida County sent him a Notice of Tax Sale: Final Notice
> Before Advertising indicating that the amount due as of August 31,
> 2012, totaled $5,039.99.  That notice stated in pertinent part that
> "[t]o protect your interest and prevent sale and future loss through
> conveyance it is essential that the total herein be paid forthwith."
> Debtor alleges that these notices were sent in violation of the
> discharge injunction imposed by § 524(a)(2) and that each violation
> caused him emotional distress and to incur attorneys' fees, damages
> for which he should be compensated.

At oral argument on July 31, 2014, Attorney Selbach acknowledged that the County had the right to pursue its tax lien, but he took issue with the language utilized by the County in the notices.  On the one hand, Attorney Selbach conceded that in rem acts fall outside the scope of the discharge injunction imposed by § 524(a)(2) based on the plain language of the statute.  On the other hand, Attorney Selbach argued that the average debtor would not have understood the County's notices or the limited reach of the in rem proceeding and suggested that the County should have utilized a bankruptcy disclaimer to plainly advise Debtor that it was not seeking to recover the tax debt from him personally.

At oral argument on August 26, 2014, the Court inquired of Attorney Selbach whether he could support his argument that absent a specific disclaimer, the County's notices were contemptible when § 524(a)(2) did not apply to the County's notices in the first instance.  Both parties were provided an opportunity to brief this issue prior to the Court's oral ruling on September 23, 2014.  Although Debtor bore the burden of proof on the Contempt Motion, Attorney Selbach filed nothing more to substantiate his position or legal theory in support of the same.

In its oral ruling, the Court set forth the applicable law as follows:

> Section 524(a)(2) provides in relevant part that the discharge "operates as an injunction against . . . an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . ." 11 U.S.C. § 524(a)(2). By its plain language, "§ 524(a)(2) . . . does not prohibit the holder of an unavoided lien from enforcing it against a debtor in an in rem proceeding. It prohibits only the commencement or continuation of an action to collect debtor's *personal* liability that arose in connection with the lien." *Reed v. S&T Bank (In re Reed)*, 274 B.R. 155, 158 (Bankr. W.D. Pa. 2002) (applying this principle to deny a debtor's sanctions motion against a private mortgagee that had initiated a mortgage foreclosure proceeding under state law that was characterized as in in rem proceeding and prohibited the mortgagee from bringing an in personam action to enforce the debtor's personal liability); *accord, e.g., Lowery v. McIlroy & Million (In re Lowery)*, 292 B.R. 645, 651 (Bankr. E.D. Mo. 2003) (§ 524(a)(2) only acts as an injunction against in personam actions against the debtor and not in rem actions) (citing *Bank One v. Annen (In re Annen)*, 246 B.R. 337, 339 (B.A.P. 8th Cir. 2000)); *Bibolotti v. Am. Home Mortg. Servicing, Inc.*, No. 4:11-CV-472, 2013 U.S. Dist. LEXIS 69242, at *29-31 (E.D. Tex. May 15, 2013) (collecting cases supporting the principle that the discharge injunction permits secured creditors to communicate with a debtor to enforce their rights against a property, in rem, rather than personally against a debtor).

Based upon the applicable law, the Court concluded that the Contempt Motion was meritless. Specifically, the Court ruled as follows:

> The law on this issue is clear and it is particularly telling that not one reported § 524(a)(2) case exists against a taxing jurisdiction. This is undoubtedly because § 524(a)(2) is inapplicable in this instance. The County correctly asserts that the notices sent in this case were in furtherance of its in rem powers under local law to exercise its right to foreclose on the real property if the real property taxes are not paid. Accordingly, Oneida County's notices are permissible under the discharge injunction and do not constitute a discharge injunction violation.

The Court now reaches the present Sanctions Motion. On October 20, 2014, the County filed a Memorandum of Law in Support of the Motion by the County of Oneida for an Order Pursuant to 28 U.S.C. § 1927 and FRBP 9011. (ECF No. 38.) Following several adjournments,

on January 16, 2015, Attorney Selbach filed an Attorney's Affirmation in Opposition to the Motion by the County of Oneida for an Order Pursuant to 28 U.S.C. § 1927 and FRBP 9011 for the Imposition of Sanctions on Debtor's Counsel, together with Debtor's Memorandum of Law in Opposition to the Motion by the County of Oneida for an Order Pursuant to 28 U.S.C. § 1927 and FRBP 9011 for the Imposition of Sanctions on Debtor's Counsel. (ECF Nos. 44 & 45.) On January 21, 2015, the County filed a Reply Affidavit to the Opposition of the Debtor to the Motion of the County of Oneida for the Imposition of Sanctions on Behalf of the County. (ECF No. 47.) The Sanctions Motion was heard on January 22, 2015, and the Court took the matter under advisement on that date.

## ARGUMENTS

The parties' arguments are straightforward. The County raises three separate grounds for relief premised upon two distinct bases, 28 U.S.C. § 1927 and Rule 9011(c). The County argues that Attorney Selbach filed the Contempt Motion for an impermissible purpose in violation of 28 U.S.C. § 1927 and Rule 9011(b)(1). The County further argues that Attorney Selbach filed and pursued the Contempt Motion without any basis in fact or law in violation of Rule 9011(b)(2).

In support of its first and second grounds for relief, the County alleges that Attorney Selbach was motivated primarily by a desire to generate attorneys' fees for personal gain. As the record in this matter reflects, Attorney Selbach acknowledges that his bankruptcy law practice is limited to the representation of debtors in matters concerning automatic stay violations and discharge injunction violations. It is well known by the bench and bar in this District that Attorney Selbach's livelihood depends upon attorneys' fees generated from the pursuit of such matters. The County challenges Attorney Selbach's aggressive prosecution of such matters as well as his customary fee arrangement and vetting process for determining which cases or violations he will

pursue.[3]  Specifically, the County contends that the Court may infer an improper purpose or bad faith from a combination of factors, including Attorney Selbach's fee arrangement with Debtor, the high volume of motions he files in cases in this District and the likelihood that creditors will settle these matters solely to avoid the cost of litigation, thus generating healthy attorneys' fees, and the lack of merit of the Contempt Motion.  As evidence of Attorney Selbach's alleged improper purpose or bad faith, the County states that its attorney contacted Attorney Selbach upon receipt of the Contempt Motion to discuss the matter and the County's belief that the notices sent to Debtor did not violate the discharge injunction because they related only to an in rem proceeding.  Kurt Parry, Esq., a part-time attorney in the Oneida County Attorney's Office, affirmed that he spoke with Attorney Selbach in June of 2014 and asked Attorney Selbach to make a settlement demand notwithstanding the County's lack of liability for the allegations set forth in the Contempt Motion.  (The "Parry Affidavit," Parry Aff. ¶ 3, Jan. 21, 2015, ECF No. 47.)  Attorney Parry further affirmed that Attorney Selbach advised him that he would not settle the matter for less than $2,500.00 to $3,000.00.[4]  (Parry Aff. ¶ 4.)  At that point, the County decided to oppose the Contempt Motion.  (Parry Aff. ¶ 5.)

---

[3] The Court is cognizant of the fact that other creditors have similarly challenged Attorney Selbach's practices before the Honorable Margaret Cangilos-Ruiz in cases filed in the Syracuse Division.  *See, e.g., In re Hall*, 518 B.R. at 202 (creditor objected to any award of attorneys' fees for a willful stay violation on the basis that Attorney Selbach engaged in excessive litigation of the matter for his own personal gain).  Chief Judge Cangilos-Ruiz therein stated, "[T]he court observes that the fee structure employed in this case (and other similar cases handled by Attorney Selbach) has the predictable effect of inhibiting early settlement of such motions at reasonable settlement amounts, thereby unnecessarily increasing attorney's time and fees on both sides of the aisle." *Id.* at 6–7.  Chief Judge Cangilos-Ruiz further stated that, based upon an example given, "it appears fair to infer that this fee structure is likely to drive an 'acceptable' settlement amount upward in a manner divorced from the actual value of the claim." *Id.* at 7.  Prior to rejecting Attorney Selbach's fee structure in that case, Chief Judge Cangilos-Ruiz voiced concern that Attorney Selbach's practice appeared to be "less about preserving the integrity of the automatic stay and more about fostering a homegrown factory mill of motions that get settled at a cost disproportionate to their reasonable and fair value." *Id.* at 14.

[4] The parties dispute whether the Court may consider statements made by either party during prior settlement negotiations.  Specifically, Attorney Selbach contends that such statements are both hearsay and barred by Federal Rule of Evidence 408.  The County, however, asserts that an attorney's affidavit is admissible and contends that Federal Rule of Evidence 408(b) permits the Court to consider settlement negotiations for the excepted purpose of proving Attorney Selbach's alleged improper intent in bringing the Contempt Motion.  *See* Fed. R. Evid. 408; 2-408 Weinstein's Federal Evidence §§ 408.02[1] & 408.08[1] (MB 2015) (Rule 408 generally bars evidence concerning

In support of its third basis for relief, the County points to the plain language of § 524(a)(2) and the plethora of case law affirming that a lienholder may enforce its in rem rights, which survive post-discharge.  The County argues that in light of the plain statutory language and the established body of case law, Attorney Selbach could not have reasonably believed that the Contempt Motion was colorable at the time he filed it.  Further, the County argues that Attorney Selbach could not have reasonably believed that his filing of the Contempt Motion was warranted by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.  To bolster its argument, the County points to Attorney Selbach's silence when offered the opportunity by the Court to provide case law in support of his position regarding the use or non-use of a disclaimer, which he posited for the first time at oral argument on July 31, 2014.

Attorney Selbach argues that sanctions are not warranted under any of the County's three proferred grounds because the County failed to produce evidence that he acted in bad faith or for an improper purpose.  Attorney Selbach asserts that in order to support a motion for sanctions under either 28 U.S.C. § 1927 or Rule 9011(c), the movant must show both a lack of merit and an improper purpose.  Notwithstanding the Court's ruling and his decision not to appeal the same, Attorney Selbach avers that he believed the Contempt Motion had merit when filed.  He further contends that it is not improper for an attorney to limit his or her practice to a particular specialty or area of law, as he admittedly has done, and he argues that the Court may not consider his conduct in other cases in order to reach a finding of bad faith or improper purpose in the present case.  Further, Attorney Selbach defends his customary fee arrangement as being in his clients' best

---

efforts to settle or compromise a dispute in furtherance of the policy of promoting the compromise and settlement of disputes, but does not require exclusion if the evidence is offered for some purpose other than proving the validity or amount of a disputed claim.)  While Attorney Selbach's hearsay objection has teeth, which neither party directly addressed, the Court need not decide the same given its narrow ruling and finding that Attorney Selbach did not act with an improper purpose in this case.

interests because the clients are always compensated whereas, if litigated, he believes the clients will in most instances be unable to prove actual damages in the form of emotional distress or punitive damages and therefore will not recover anything. Lastly, Attorney Selbach contends that his refusal to withdraw the Contempt Motion cannot alone be a basis for sanctions.

## DISCUSSION

The Court will address in turn the three independent grounds for sanctions raised by the County. First, however, the Court deems it imperative to address the purpose of § 524(a)(2) and to make clear that it is important that debtors and their counsel are incentivized to bring contempt motions for discharge injunction violations in appropriate cases. Merritt S. Locke, Esq., counsel of record to the County, expressed the same sentiment on behalf of the County at oral argument before turning to the specific facts of the Sanctions Motion and pointing out that this simply was not such a case.

For most individuals, the primary purpose of filing bankruptcy is to obtain a discharge, which "releases" the debtor from personal liability on outstanding obligations with respect to any discharged debt. *Morales v. Doral Bank (In re Morales)*, No. 09-06663, 2012 Bankr. LEXIS 907, at *13 (Bankr. D. P.R. Feb. 15, 2012) (citations omitted). As the bankruptcy court in *Morales* succinctly stated:

> Section 727(a) of the Bankruptcy Code provides for the grant of a discharge to debtors; Section 727(b) declares that the effect of a discharge is to free the debtor from all debts that arose before bankruptcy. Likewise, under 11 U.S.C. § 524(a)(2), a discharge from bankruptcy operates as an injunction against *in personam* claims against a debtor. Section 524(a)(2) of the Bankruptcy Code also ensures that the discharge will be completely effective and will operate as an injunction against the commencement or continuation of an action or the employment of process to collect or recover a debt as a personal liability of the debtor. The discharge injunction that arises upon entry of a discharge order is perhaps the most important feature of the discharge. It protects the debtor from a

> subsequent suit in a state court, or any other act to collect, by a creditor whose claim had been discharged. The discharge injunction helps to ensure that the debtor's fresh start is realized by prohibiting creditors from attempting to collect discharged debts.

*Id.* at *13–14 (internal citations and quotation marks omitted); accord *Nicholas v. Oren (In re Nicholas)*, 457 B.R. 202, 224 (Bankr. E.D.N.Y. 2011) ("The discharge injunction lies at the heart of one of the fundamental purposes of bankruptcy law: to give the debtor a fresh start.") (citation omitted).

A violation of the discharge injunction imposed by § 524(a)(2) is punishable by contempt. *Kinney v. Gallagher*, 14-CV-6233, 2015 U.S. Dist. LEXIS 7951, at *21 (W.D.N.Y. Jan. 23, 2015) (citing *In re Nassoko*, 405 B.R. 515, 520 (S.D.N.Y. 2009); *In re Cruz*, 254 B.R. 801, 816 (S.D.N.Y. 2000)). Thus, sanctions may be appropriate where a party either willfully disobeys a court order or a losing party acts in bad faith, vexatiously, wantonly, or for oppressive reasons. *Id.* (citing *In re Cruz*, 254 B.R. at 816 (citing *In re Watkins*, 240 B.R. 668, 678 (E.D.N.Y. 1999))). As the wealth of case law under §§ 524(a)(2) and 105(a) demonstrates, sanctions for a discharge injunction violation may be appropriate in a myriad of circumstances. As such, this Court in no way seeks to dissuade Attorney Selbach or other counsel from vindicating the discharge injunction imposed by § 524(a)(2), should it become necessary to do so.[5] The Court having acknowledged the important purpose of § 524(a)(2) "'to give complete effect to the discharge,'" *Solow v. Kalikow*

---

[5] This is not to say that attorneys' fees will be awarded carte blanche once the Court finds a discharge injunction violation. Although this Court has not yet ruled upon the issue of attorneys' fees in the § 524(a)(2) context, the Court is aware that bankruptcy courts frequently refuse to award the total attorneys' fees requested for a violation of the discharge injunction when there is evidence that a debtor and/or his counsel could have mitigated damages by attempting to resolve the matter prior to litigation but did not do so. *See, e.g., In re Jones*, No. 09-21945, 2012 Bankr. LEXIS 5156, at *8 (Bankr. E.D. Ky. Nov. 2, 2012) (collecting cases). The rationale behind such rulings is that "[t]he facts surrounding a violation of the discharge injunction are unique to each case and the facts must be considered while balancing 'the importance of punishing willful violations of the discharge injunction' with 'the importance of preventing motions for contempt from becoming a profit-making endeavor.'" *Id.* at *8 (quoting *In re Frambes*, No. 08-22398, 2012 Bankr. LEXIS 791, at *21 (Bankr. E.D. Ky. Feb. 7, 2012)).

*(In re Kalikow)*, 602 F.3d 82, 96 (2d Cir. 2010) (quoting *In re Nassoko*, 405 B.R. at 525) (internal citation omitted)), it now returns its attention to the County's Sanctions Motion.

### A.  28 U.S.C. § 1927

The Second Circuit recently confirmed that 28 U.S.C. § 1927, "standing alone, plainly endows the bankruptcy court with authority to impose sanctions [for attorney misconduct]." *In re Khan*, No. 14-1151, 2015 U.S. App. LEXIS 1792, at *2 (2d Cir. Feb. 5, 2015) (citing *Baker v. Latham Sparrowbush Assoc. (In re Cohoes Indus. Terminal, Inc.)*, 931 F.2d 222, 230 (2d Cir. 1991)).  This statute states as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (2012).

The parties are in agreement regarding the applicable legal standard for 28 U.S.C. § 1927 determinations. "In order to impose sanctions under Section 1927, a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith–that is, motivated by improper purposes such as harassment or delay." *In re Khan*, 2015 U.S. App.  1792, at *3 (quoting *Eisemann v. Greene*, 204 F.3d 393, 395–96 (2d Cir. 2000) (internal citation and quotation marks omitted)).  "In contrast to the objective reasonableness standard that applies to an award of sanctions under Federal Rule of Civil Procedure 11, 'bad faith is the touchstone of an award under [28 U.S.C.] section 1927.'" *Garvey v. Davis (In re St. Vincent's Catholic Med. Ctrs. of N.Y.)*, 14-CV-3293, 2014 U.S. Dist. LEXIS 97808 (S.D.N.Y. July 16, 2014) (citing *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991)).

When considering sanctions in the context of 28 U.S.C. § 1927, bad faith may be inferred only "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 180 (2d Cir. 2004) (quoting *60 E. 80th St. Equities, Inc. v. Sapir (In re 60 E. 80th St. Equities)*, 218 F.3d 109, 115 (2d Cir. 2000) (citations and internal quotation marks omitted)). The Second Circuit has cautioned that, where an attorney's actions are nothing more than the result of poor legal judgment, sanctions are not warranted under this statute. *Salovaara v. Eckert*, 222 F.3d 19, 35 (2d Cir. 2000) (citing *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 340 (2d Cir. 1999)). Hence, the mere fact that a party does not prevail on its claim is insufficient to render a finding of bad faith.

The first prong of the test is satisfied when a claim "is utterly devoid of a legal or factual basis." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d at 337. Thus, the question is whether a "reasonable attorney" could have concluded that Debtor's § 524(a)(2) claim might be successful. *Id.* Given the Court's oral ruling and denial of the Sanctions Motion for the reasons stated on the record, the Court finds that the first prong is satisfied.

The Court is unpersuaded, however, by the County's argument that Attorney Selbach acted in bad faith or vexatiously while pursuing the Contempt Motion. The types of acts that would justify sanctions under 28 U.S.C. § 1927 include, but are not limited to, resubmitting a motion that had previously been denied, bringing a motion based on facts the opposite of which were previously found by the court, making several insupportable bias recusal motions and repeated motions to reargue, continually engaging in obfuscation of the issues, hyperbolism and groundless presumptions in addition to insinuating that the court was biased, and waiting until the eve of trial before making a jury demand. *Keller v. Mobil Corp.*, 55 F.3d 94, 99 (2d Cir. 1995) (citing *Hudson*

*Motors P'ship v. Crest Leasing Enters.*, 845 F. Supp. 969, 978 (E.D.N.Y. 1994) (internal citations and quotation marks omitted)).

The record in the present case does not include similar acts evidencing bad faith by Attorney Selbach. While the Court understands the County's frustration at having to defend a baseless motion, the County has not made the requisite showing of subjective bad faith on the part of Attorney Selbach. The Court is mindful that when it issues an award of sanctions under 28 U.S.C. § 1927, "the court's factual findings of bad faith must be characterized by 'a high degree of specificity.'" *Milltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34, 38 (2d Cir. 1995) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986) (internal quotation marks omitted)). Here, the County asks the Court to infer bad faith based upon a single factor, namely Attorney Selbach's fee arrangement and general practices. Albeit in a different context, the Second Circuit cautioned against this very finding in the absence of other evidence of bad faith when it stated:

> [A]lthough we harbor no illusions about pecuniary gain as a motivation for legal actions, it would be unduly cynical to conclude categorically that the pursuit of a relatively low-value claim necessarily implies some sort of bad faith. Vindication, or the prospect of winning punitive damages, are legitimate motives for bringing a legal action. Although we do not now preclude the use of disproportionate fees as one indicator of bad faith where there is additional explicit and objective evidence indicating that an action was prosecuted simply for attorney's fees, we conclude that the fees and fee arrangement in this case are simply not probative of bad faith.

*Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d at 339–40. Given the sanctity of the discharge injunction and the importance of punishing violations of the same, in the absence of other factors, the Court cannot make the leap requested by the County to support a finding of bad faith in this case. Were the Court to hold otherwise, 28 U.S.C. § 1927 would necessarily be implicated each and every time Attorney Selbach filed a motion seeking to redress a discharge injunction violation

and, assuming a lack of colorability, the movant's burden would be much less onerous. The Court therefore has no basis to find that Attorney Selbach violated 28 U.S.C. § 1927.

### B. Sanctions Under Rule 9011

Under Rule 9011(b), an attorney who presents a "petition, pleading, written motion, or other paper" to the court, whether by "signing, filing, submitting, or later advocating" the same makes four certifications. Three are certifications that the legal assertions in the case are nonfrivolous, and the factual contentions and denials have or are likely to have evidentiary support. FED. R. BANKR. P. 9011(b)(2)–(4). The fourth is a certification that the filing is not being made for an improper purpose. FED. R. BANKR. P. 9011(b)(1). "A court may impose sanctions if it finds a violation of any one of the four subdivisions of Rule 9011(b)." *Sharer v. State Street Bank of Cross Plains (In re Sharer)*, No. 14-00012, 2014 Bankr. LEXIS 2320, at *24 (Bankr. W.D. Wis. May 28, 2014).

Rule 9011(c) provides the mechanism for the court to impose sanctions against an attorney whom it finds violated Rule 9011's affirmative duty not to file, submit, or advocate a position set forth in a written document for an improper purpose or without legal or evidentiary support. FED. R. BANKR. P. 9011(c); *In re Hudson*, 1:10-CV-1352, 2011 U.S. Dist. LEXIS 24445, at *12 (N.D.N.Y. Mar. 10, 2011). The burden of proof is on the moving party to prove that sanctions are warranted. *In re Kliegl Bros. Universal Elec. Stage Lighting Co.*, 238 B.R. 531, 541 (Bankr. E.D.N.Y. 1999) (citing *In re Standfield*, 152 B.R. 528, 534 (Bankr. N.D. Ill. 1993); *In re Cedar Falls Hotel Props. Ltd.*, 102 B.R. 1009, 1014 (Bankr. N.D. Iowa 1989)). "Once a prima facie case has been made, the burden shifts to the party from whom the sanction is sought to show a legitimate purpose for the filing." *Id.* (citing *In re King*, 83 B.R. 843, 847 (Bankr. M.D. Ga. 1988)). Because Rule 9011 parallels Federal Rule of Civil Procedure 11 ("Civil Rule 11"), this Court's application

of Rule 9011 is informed by Civil Rule 11 jurisprudence. *Klein v. Wilson, Elser, Moskowitz, Edelman & Dicker (In re Highgate Equities, Ltd.)*, 279 F.3d 148, 151 (2d Cir. 2002) (citation omitted). "Rule 9011, like its counterpart Rule 11 of the Federal Rules of Civil Procedure, plays an important role in maintaining the professionalism of the bar and the integrity of court processes." *In re Hudson*, 2011 U.S. Dist. LEXIS 24445, at *12.

### C. Rule 9011(b)(1)

Rule 9011(b)(1) provides as follows:

> **(b) Representations to the Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a . . . written motion, . . . an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
> (1)   It is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation . . . .

FED. R. BANKR. P. 9011(b)(1). Rule 9011(b)(1) sets forth a non-exclusive list of improper purposes. *In re Computer Dynamics Inc. v. Merrill (In re Computer Dynamics Inc.)*, 252 B.R. 50, 57 (Bankr. E.D. Va. 1997) ("The enumerated improprieties are examples only of the type of conduct proscribed by the Rule."). Unlike 28 U.S.C. § 1927 determinations, "[i]n deciding whether the signer of a pleading, motion, or other paper has crossed the line between zealous advocacy and plain pettifoggery [for purposes of Rule 9011], the court applies an objective standard of reasonableness." *United States v. Int'l Bhd. of Teamsters*, 948 F.2d at 1344 (citing *Bus. Guides, Inc. v. Chromatic Communs. Enters.*, 498 U.S. 533, 554 (1991)). Because direct evidence of motive, intent or purpose is rarely available, the Court must look to objectively ascertainable circumstances that support an inference of improper purpose. *In re Enmon*, No. 12-10268, 2013 Bankr. LEXIS 504, at *10–11 (Bankr. E.D. Tex. Feb. 7, 2013) (citing cases).

In the present case, although the Court has serious concerns about Attorney Selbach's lapse or error in legal judgment, the Court finds that the County has provided no evidence that he had any improper purpose in bringing the Contempt Motion. Both the County and this Court have acknowledged that contempt motions seeking to vindicate the discharge injunction imposed by § 524(a)(2) serve an important role in the bankruptcy system. Further, the County has not offered any evidence of prior dealings between the parties to suggest that Attorney Selbach targeted or sought to harass the County in particular. The Court therefore has no basis to find that Attorney Selbach violated Rule 9011(b)(1).

**D. Rule 9011(b)(2)**

Rule 9011(b)(2) provides as follows:

> **(b) Representations to the Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a . . . written motion, . . . an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
> . . . .
> (2)   The claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; . . . .

FED. R. BANKR. P. 9011(b)(2). Rule 9011(b)(2) requires that pleadings, motions, and other papers be justifiable at the time they are signed. The Rule 9011(b)(2) certification extends to the duty to perform adequate legal research that confirms a party's legal position is warranted by existing law or a good faith argument for a modification or extension of existing law before the filing is made. *In re Spickelmier*, 469 B.R. 903, 911 (Bankr. D. Nev. 2012) (citing *Winterton v. Humitech of N. Cal., LLC (In re Blue Pine, LLC)*, 457 B.R. 64, 75 (B.A.P. 9th Cir. 2011) (internal citation omitted)). To constitute a frivolous legal position for purposes of Rule 11, and thus Rule 9011, "it must be clear under existing precedents that there is no chance of success and no reasonable

argument to extend, modify or reverse the law as it stands." *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir.1990) (citing *McMahon v. Shearson/American Express, Inc.*, 896 F.2d 17, 21–22 (2d Cir. 1990)). Under Rule 9011(b)(2), the Court must apply a standard of objective reasonableness, meaning that the Court must ask whether "'a reasonable attorney in like circumstances could have believed his actions to be legally justified.'" *In re Kersner*, 412 B.R. 733, 744 (Bankr. D. Md. 2009) (quoting *In re Sargent*, 136 F.3d 349, 352 (4th Cir. 2002)).

Contrary to Attorney Selbach's contention, Rule 9011(b)(2) determination does not require an examination or finding of improper purpose. Rather, where an attorney's position is so clearly untenable as a matter of law, sanctions are necessitated. Such is the case here. Attorney Selbach's position that the County violated the discharge injunction by virtue of its rem notices had absolutely no chance of success under existing precedent. As previously recognized by the Court's oral ruling and order denying the Contempt Motion, because any lien that is not invalidated or avoided survives the debtor's discharge, " section 524(a) does not bar creditors from enforcing valid, prebankruptcy liens or security interests against properties that have been retained by the estate or by the debtor after discharge." *In re Morales*, 2012 Bankr. LEXIS 907, at *15 (citations omitted). "While a secured creditor may retain a lien on property of the debtor that could be enforced by an *in rem* action, the creditor may not attempt to collect the debt as a personal liability by seeking money damages." *Id.* at 16. Here, the County's notices could not be read as an attempt to collect against Debtor personally. Further, based on the plain language of § 524(a)(2), Attorney Selbach's argument in an attempt to justify his filing of the Contempt Motion that the County's use of a bankruptcy disclaimer was required on its in rem notices was frivolous. Given Attorney Selbach's lack of a further submission regarding his disclaimer argument, the Court can only assume that this argument, like the Contempt Motion itself, lacked proper consideration and

vetting. Under the circumstances, the Court is convinced that any reasonable attorney would not have filed the Contempt Motion and finds it particularly disturbing that Attorney Selbach, who specializes in and limits his practice to such matters, fell below the objective standard of reasonableness by which all attorneys' conduct is measured. Based on the same, the Court finds that Attorney Selbach violated Rule 9011(b)(2).

## CONCLUSION

For the foregoing reasons, the Court finds that Attorney Selbach filed the Contempt Motion in violation of Rule 9011(b)(2). Consistent with the governing principle that a bankruptcy court should exercise its § 105(a) powers with restraint and caution, the Court will impose sanctions under Rule 9011(c) against Attorney Selbach in the form of attorneys' fees and costs payable to the County for reimbursement of the County's legal expenditures in defense of the Contempt Motion and in prosecution of the Sanctions Motion.

Accordingly, it is hereby

ORDERED, that the County's request for sanctions pursuant to 28 U.S.C. § 1927 is denied; and it is further

ORDERED, that the County's request for sanctions pursuant to Rule 9011(c), grounded on Rule 9011(b)(1), is denied; and it is further

ORDERED, that the County's request for sanctions pursuant to Rule 9011(c), grounded on Rule 9011(b)(2), is granted; and it is further

ORDERED, that Attorney Locke is directed to file a fee application in connection with these matters within 10 days of the Court's issuance of this Memorandum-Decision and Order, after which date this Court will separately issue a final order awarding sanctions in a set amount.

It is SO ORDERED.

Dated: February 13, 2015
      Utica, New York

/s/Diane Davis_____
DIANE DAVIS
United States Bankruptcy Judge